Richardson, J.
This Court concurs in the opinion of the circuit Judge on the law of the case, as expressed in his *162 charge to the jury. The loss by fire, which, occurring in another boat, renders the owner liable, will in like manner make liable, the owner of a steamboat, propelled by fire. The reason of the severe accountability of common carriers is, because their possession of the cargo makes it an easy matter for them to take or purloin the goods: and as easy to get up a pretended accident or misfortune, and pass it off as the cause of the loss. In like manner, it is easy for a carrier, choosing as he may his own agents, time and. place, to confederate with robbers. It is for these considerations that the law, proceeding on the moral principle of prudent prevention, cuts off the temptation of pecuniary gain, and makes the carrier liable for all losses, unless they occur through the depredations of public enemies, or some act of Providence, against which human strength and care cannot guard. The sudden shifting of the channel, or the recent introduction of a hidden sawyer or snag, which are among the natural incidents of our rivers, have been, when unknown, always holden within the latter exception. But, with these exceptions, the carrier’s undertaking is to deliver his cargo at the destined port, or be answerable. If he does not so deliver it, he must pay the value in money; and then he is entitled to freight, just as if he had delivered the specific goods. In this situation the present defendants stand. They and the plaintiffs, morally speaking, are innocent; but one or the other must bear the loss — and the law decrees it to the carriers. This is enough for the Court to know, and, knowing, must preserve the law. But in a case of novel application, and for the satisfaction of the many interested in the principle, I may add, that the carrier who undertakes to deliver freight, through the extra danger of fire-engines, can, with less reason than other carriers, plead that the loss has occurred by an unavoidable, providential misfortune, where it has been caused by the very means he has himself introduced into the hull of the boat: and for which he must, on that account, be more clearly liable.
Again, on account of the habitual use of the steam power, which is attended with peculiar danger from fire, it becomes the more easy to purloin a rich cargo, then fire the boat, and make it appear that the cargo too had been burnt by a very common accident, from the furnace of the steamer. Such *163 bad faith could not be apprehended in this case; but once permit the fleets of steamboats that run the Tennessee, or ply between St. Louis and New Orleans, to have such a manner of exempting the owners from loss by fire, and who can tell the consequences to the unwary, or the gain to the fraudulent. Need I remind the owners of steamboats that they have but to give public notice that they will not be liable in a certain class of cases; and, to deceive no one, give no other bill of lading but with the express exception written, “not to be liable for accidents by fire” — and they then make the -desired exception, the law of the contract. If there be then any grievance from the severity of the law, they hold the remedy at their own discretion. And I would here apply to all carriers who inveigh against the severity of the law, which, for general purposes, is wise, the same observation. They may and will relieve themselves, whenever essential to their interests, by special acceptances.
I am bound to notice the supposed custom, in favor of boats propelled by the agency of fire. Custom may well form an exception to a general rule of law: but it must be immemorial, certain, and reasonable; it ought to appear, by proof of much practice, that parties on both sides had acquiesced in the specific custom; and then it would be just to conclude that they had adopted the custom in place of a particular contract, for each case; and a custom so sanctioned would become, as a peculiar act of legislation, of which all persons must take notice, at their own peril. But the custom set up in the present case was very recent, as, indeed, is the use in this State of steamboats themselves, had been practiced in very few instances, and was quite uncertain and vacillating. We cannot yield up the well-adjudged and established rules of law, for a custom which seems to consist more in the practice, opinions, and wishes, for such a custom, by one party, than in any assent to its prevalence and adoption by the party on the opposite side.
We decide the case upon the general grounds of the law, and the custom, as that is evidently desired: and I therefore say little of the fourth ground of appeal. But inasmuch as the cotton was burnt outside of the steamer, in the night, and when she was at anchor — it would be hard to trace the loss to the fire, which is necessary to the engine only when *164 in practical use, or under preparation. Unless we conclude first, that there was a want of careful vigilance over such fire, who can tell, when all were asleep, where the fire came from ? Let a jury re-consider the case.
A new trial is granted unanimously.